UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GRANT REED,

                         Plaintiff,

        - against -

LUXURY VACATION HOME LLC;
HUGH BARTON; and ANDREW
ROBBINS, as Trustee of the Bird Street Real
Estate Development Trust,

                         Defendants.

**ORDER**

20 Civ. 4243 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This case concerns the effect of the COVID-19 pandemic on the validity of a

luxury vacation rental services agreement and the refundability of a security deposit paid

pursuant to that agreement.   Plaintiff Grant Reed seeks a declaratory judgment, and asserts

claims for constructive fraud and unjust enrichment against Defendants Luxury Vacation Homes

LLC ("LVH"); Hugh Barton; and Andrew Robbins, in his capacity as trustee of Bird Streets Real

Estate Development Trust.   Subject matter jurisdiction is premised on diversity of citizenship.

(Cmplt. (Dkt. No. 1) ¶¶ 1, 7, 35-54)

        Defendants have moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2),

and 12(b)(6) or, in the alternative, to dismiss or transfer this case pursuant to 28 U.S.C. § 1404 or

the forum non conveniens doctrine.   (Def. Motion (Dkt. No. 19))

        For the reasons stated below, Defendants' motion to dismiss will be granted in

part and denied in part.

**BACKGROUND**

I.     **FACTS**[1]

Defendant LVH is a Delaware entity with its principal place of business in New York.  It "offers luxury vacation rental services for over 5,000 luxury homes in over 90 destinations worldwide."  (Cmplt. (Dkt. No. 1) ¶ 3)  Defendant Barton is the "co-founder and Chief Operating Officer of LVH" and is domiciled in New York.  (Id. ¶ 4)

On February 17, 2020, Plaintiff executed a booking services agreement (the "Booking Agreement") with LVH to rent a property at 1380 Mockingbird Place, Los Angeles, California (the "Property").  (Id. ¶ 5; id., Ex. A ("Booking Agreement") (Dkt. No. 1-1) at 2-4[2]) The Property is owned by the Bird Streets Real Estate Development Trust (the "Trust" or the "Owner").  (Cmplt. (Dkt. No. 1) ¶ 6)  Defendant Robbins is the trustee of the Trust.[3]  (Id.)

Pursuant to the Booking Agreement, LVH – as an "agent of the Owner" – agreed to rent Plaintiff the Property from August 1, 2020 through August 31, 2020, for a total cost of $347,500.  (Id. ¶¶ 15, 17; Booking Agreement (Dkt. No. 1-1) at 2-3)  The Booking Agreement provides that the Property can accommodate up to 12 guests, plus additional staff, and that daily maid and butler services were included.  (Cmplt. (Dkt. No. 1) ¶¶ 19-20; Booking Agreement (Dkt. No. 1-1) at 2)  Pursuant to the Booking Agreement, $148,750 – half of the total cost for the rental – was due within two days of signing the agreement.  (Booking Agreement (Dkt. No. 1-1)

---

[1]  The following facts are presumed true for purposes of resolving Defendants' motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

[2]  Citations to page numbers of docketed material correspond to the pagination generated by this District's Electronic Case Files ("ECF") system.

[3]  As discussed below, the Complaint alleges that Robbins is a citizen of Washington.  (Cmplt. Dkt. No. 1) ¶ 6)  Robbins has submitted a declaration stating that he resides in New York. (Robbins Decl. (Dkt. No. 21) ¶ 5)

at 2-3)  The balance would be due on April 30, 2020, with a security deposit of $50,000 due on July 25, 2020.  (Id. at 2)

The Booking Agreement provides that it "becomes binding when submitted electronically or signed by you or once the Company [LVH] has received your initial payment whichever occurs first."  (Id. at 3)

The agreement contains a "Cancellation Policy," which states:

> To cancel your booking, you must provide the Company with written notice of your cancellation.  All payments made by you are non-refundable.  The Company will make best efforts to re-book the property for the same period and refund on [a] pro-rata basis any new rental fees up to the total amount paid by you.

(Id.)

The agreement also contains a "Force Majeure" clause, which states:

> Neither the Company (including its Affiliates) nor the Owner will be liable for any damages, losses or injuries caused by conditions outside of that person's control, including, without limitation, any fire, flood, hurricane, tsunami, war, revolution, terrorism or change to any law, regulation or government policy.

(Id. at 4)

The agreement also contains a "Roles of the Company" provision, which states, in relevant part, that "you acknowledge with your written consent that [sic[4]] may act on your behalf as your agent to enter into agreements with vendors and owners in order to provide services covered under this agreement."  (Id. at 3-4)[5]

---

[4]  Omitted from the agreement is the name of the entity or individual authorized to act on Plaintiff's behalf.  The parties debate the significance of this omission at length in their briefing. (See Def. Br. (Dkt. No. 20) at 26-28; Pltf. Opp. (Dkt. No. 22) at 8-11, 16-17; Def. Reply Br. (Dkt. No. 23) at 6-8, 12-13)

[5]  The "Roles of the Company" provision, in its entirety, reads as follows:

> The Company is an agent of the Owner and neither the Company nor any of its affiliated entities, shareholders, directors, employees, agents and representatives ("Affiliates") are

Finally, the agreement states that

[a]ny change or amendment to this agreement, including, without limitation, an increase or decrease in the number of guests or an increase, decrease or other change to the rental period, must be made in conformity with the provisions of this agreement and, in all cases, is subject to the prior written approval of the Company, which approval may be withheld at its sole discretion. This agreement will be governed under the laws of New York State, USA and any disputes must be referred to a New York court. You cannot transfer or assign this agreement or any part thereof.

(Id. at 4)

On February 17, 2020, Plaintiff executed the Booking Agreement and paid the $148,750 initial deposit (the "Deposit"), as specified in the Booking Agreement. (Cmplt. (Dkt. No. 1) ¶ 18) Plaintiff asserts that "LVH did not provide [him] with an executed copy of the Booking Agreement." (Id. ¶ 16)

In March 2020, "international health organizations declared that the emerging threat from Covid-19 had risen to the level of a global pandemic." (Id. ¶ 21) "As a resident of the United Kingdom, [Plaintiff was] subject to heightened travel restrictions, which includes a Covid-19 Exceptional Travel Advisory Notice advising against all non-essential travel."

---

liable for any delays, accidents, damages, injuries or losses suffered by you, your guests or the Property other than the negligence or wilful misconduct of the Company. In no event will the Company or its Affiliates be liable for any indirect, punitive, incidental, special or consequential damages arising out of or in any way connected with this agreement or the rental or use of the Property. If, despite the limitations contained herein, the Company or its Affiliates are found liable for any loss or damage which arises out of or in any way connected with any of the occurrences described herein, then the Company's or its Affiliate's liabilities will in no event exceed the greater of one hundred United States dollars or the total related rental revenue paid by you at the time of the occurrence. Furthermore, you acknowledge that any use of pool, hot tub and/or beach are entirely at your own risk. You acknowledge that children and all other non swimmers should be supervised at all times. Furthermore, you acknowledge with your written consent that [sic] may act on your behalf as your agent to enter into agreements with vendors and owners in order to provide services covered under this agreement.

(Booking Agreement (Dkt. No. 1-1) at 3-4)

Moreover, California – the state where the Property is located – "prohibited non-essential travel for vacations or pleasure." (Id. ¶ 23)  Similarly, the City of Los Angeles – the municipality where the Property is located – required that all non-essential businesses that require in-person attendance cease operations and prohibited private gatherings of more than nine people. (Id. ¶ 37)

Plaintiff contacted LVH to inquire about rescheduling his stay for late 2020 or 2021. (Id. ¶ 22)  The Owner of the Property stated that Plaintiff could not reschedule his rental and that Plaintiff's deposit would not be refunded. (Id. ¶¶ 22, 24)

"On May 20, 2020, [Plaintiff] sent a letter to Defendants demanding the return of his Deposit, and noted Defendants' failure to register the Property and obtain a valid short-term registration number in violation of the Los Angeles Home Sharing Ordinance." (Id. ¶ 25) According to Plaintiff, the referenced ordinance "prohibits short-term rental of real estate, such as the Property, without a registration number, and requires all advertisements for the Property to clearly list the registration number. (Id. ¶ 26)

On May 26, 2020, the Owner's representatives responded by reiterating that the Deposit would not be refunded, and that Plaintiff "was responsible for remitting the remaining balance under the 'Lease' and 'Rider.'" Plaintiff asserts that neither the Owner nor the Owner's representatives had previously mentioned a Lease or Rider. (See id. ¶ 27)

Shortly thereafter, the Owner disclosed to Plaintiff two "never before seen" contractual documents regarding Plaintiff's rental of the Property, including (1) a Residential Lease or Month-to-Month Rental Agreement (the "Lease") and its attachments; and (2) a Rider to the Residential Lease or Month-to-Month Rental Agreement (the "Rider"). (Id. ¶ 28; id., Ex. B ("Lease") (Dkt. No. 1-1) at 6-23; id., Ex. C ("Rider") (Dkt. No. 1-1) at 25-38)  Plaintiff asserts

that he was "surprise[d]" to see that the Rider was entered into between the Trust and "'Grant

Reed represented by Luxury Vacation Home LLC/Hugh Barton.'" (Cmplt. (Dkt. No. 1) ¶ 29;

Rider (Dkt. No. 1-1) at 25)  "The Rider is signed by Barton in his purported capacity as a

representative of Mr. Reed." (Cmplt. (Dkt. No. 1) ¶ 30; Rider (Dkt. No. 1-1) at 32)  The Lease,

and its attachments, were also signed by Barton.  (See Lease (Dkt. No. 1-1))  Barton's signatures

on both the Lease and Rider are dated February 27, 2020.  (E.g., Lease (Dkt. No. 1-1) at 22;

Rider (Dkt. No. 1-1) at 32)

      The Rider states that "[t]he Lease, as modified by this Rider, constitutes the entire

agreement between the parties and supersedes any prior understanding or representation of any

kind preceding the date of this Agreement.  There are no other promises, conditions,

understandings or other agreements, whether oral or written, relating to the subject matter of this

Lease.  The Lease may be modified in writing and must be signed by both Landlord [the Trust]

and Tenant [Plaintiff, represented by LVH or Barton]." (Rider (Dkt. No. 1-1) at 30)

      According to Plaintiff, "[t]he Booking Agreement did not authorize LVH to

execute any contracts on Mr. Reed's behalf, and Mr. Reed did not provide LVH or Barton with

the authority, either express or implied, to execute the Rider on his behalf."  Plaintiff also notes

that "the Booking Agreement ma[kes] no reference to the Lease or Rider at all." (Cmplt. (Dkt.

No. 1)  ¶ 33)

      Plaintiff further alleges that "[t]he terms and conditions of the [Lease and] Rider

differ substantially from those included in the Booking Agreement." (See id. ¶ 32)  For example,

rent under the Rider is $225,000, plus a security deposit of $50,000 and an exit-cleaning fee of

$1,500 – for a total of $276,500. (Rider (Dkt. No. 1-1) at 25)  By contrast, rent under the Lease

and Rider is $281,000, plus a security deposit of $50,000 and $16,500 in service fees – for a total

of $347,500.  (Booking Agreement (Dkt. No. 1-1) at 2)

The Rider also states that

> [the] Lease shall be governed by and construed in accordance with the laws of the State
> of California.  Any action instituted by any party hereto against the other with regard to
> this Lease shall be in Los Angeles County, California.  To the extent that any provision of
> this Lease shall be deemed to be invalid under applicable law, such provision shall be
> deemed to be deleted from this Lease, and all remaining provisions of this Lease shall
> remain in full force and effect.

(Rider (Dkt. No. 1-1) at 28-29; contrast Booking Agreement (Dkt. No. 1-1) at 4 (New York

choice of law and forum selection clause))  Finally, the Lease  contains a mediation clause that

does not appear in the Booking Agreement.  (See Lease (Dkt. No. 1-1) at 11)[6]

## II.    PROCEDURAL HISTORY

The Complaint was filed on June 3, 2020.  (Cmplt. (Dkt. No. 1))  Pursuant to 28

U.S.C. § 2201, Plaintiff seeks a declaratory judgment that:

A.  The Booking Agreement is a valid and binding contract between LVH and Mr. Reed;

B.  Defendants are required to refund the Deposit in its entirety to Mr. Reed;

C.  Global coronavirus restrictions, and those in place in California and the United
Kingdom, render performance of the Booking Agreement impossible, and require[]
the immediate return of the Deposit and further releases Mr. Reed from any other
obligation, payment, or liability under the Booking Agreement;

D.  LVH was not authorized to execute any contracts on Mr. Reed's behalf, and Mr. Reed
did not provide LVH or Barton with the authority, either express or implied, to
execute the Lease and Rider on his behalf;

---

[6]  The cancellation policies set forth in the Rider and in the Booking Agreement also differ.
Under the Rider, "rent is non-refundable unless Tenant terminates the Lease on account of
Landlord's failure to timely deliver possession of the property as per the Lease." (Rider (Dkt.
No. 1-1) at 25)  The Booking Agreement, by contrast, states:  "To cancel your booking, you must
provide the Company with written notice of your cancellation.  All payments made by you are
non-refundable.  The Company will make best efforts to re-book the property for the same period
and refund on [a] pro-rata basis any new rental fees up to the total amount paid by you."
(Booking Agreement (Dkt. No. 1-1) at 3)

E.   The Lease and Rider are void and unenforceable against Mr. Reed, and Mr. Reed has no obligation, payment, or liability under the Lease and Rider; and

F.   Such other and further relief as this Court deems just and appropriate.

(Id. at 7)

The Complaint also asserts a claim for constructive fraud against LVH and Barton, and seeks $276,000 in damages from them, because LVH and Barton "secretly executed the Lease and Rider on Mr. Reed's behalf without his authorization." (Id. ¶¶ 43-49)

Finally, and in the alternative, Plaintiff asserts a claim for unjust enrichment against all Defendants for LVH's failure to refund the Deposit. (Id. ¶¶ 50-54)

On December 2, 2020, Defendants moved to dismiss or to transfer, citing Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6); 28 U.S.C. § 1404; and the forum non conveniens doctrine. (Def. Motion (Dkt. No. 19))

## DISCUSSION

## I.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Motion to Dismiss

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" APWU v.

Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)); see also Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (citing Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002)) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."). "Under Rule 12(b)(1), even 'a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient.'" Castillo v. Rice, 581 F. Supp. 2d 468, 471 (S.D.N.Y. 2008) (quoting Frisone v. Pepsico Inc., 369 F. Supp. 2d 464, 469 (S.D.N.Y. 2005)).

In considering a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id.; see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." (citing Makarova, 201 F.3d at 113)). In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, No. 03 Civ. 597 RWS, 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

"A motion to dismiss a complaint for lack of standing is properly brought pursuant to Rule 12(b)(1) . . . because it relates to the court's subject matter jurisdiction." ED Capital, LLC v. Bloomfield Inv. Res. Corp., 155 F. Supp. 3d 434, 446 (S.D.N.Y. 2016), aff'd in rel. part, 660 F. App'x 27 (2d Cir. 2016).

**B.**     **Rule 12(b)(2) Motion to Dismiss**

"On a motion to dismiss pursuant to Rule 12(b)(2), the 'plaintiff bears the burden

of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring

suit.'" In re Platinum & Palladium Antitrust Litig., 449 F. Supp. 3d 290, 317 (S.D.N.Y. 2020)

(quoting Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010)).  At the

pleading stage, a plaintiff may carry this burden "'by pleading in good faith . . . legally sufficient

allegations of jurisdiction, i.e., by making a "prima facie showing" of jurisdiction.'"  Whitaker v.

Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (quoting Jazini v. Nissan Motor Co.,

Ltd., 148 F.3d 181, 184 (2d Cir. 1998)).  Such a showing "must include an averment of facts

that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the

defendant."  In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013).  "The

allegations in the complaint must be taken as true," but only "to the extent they are

uncontroverted by the defendant's affidavits."  In re Platinum & Palladium, 449 F. Supp. 2d at

318 (quoting MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012)).  "In deciding a

motion to dismiss a complaint for want of personal jurisdiction, the district court may consider

materials outside the pleadings, including affidavits and other written materials."  Jonas v. Est. of

Leven, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citations omitted).

**C.**     **Rule 12(b)(6) Motion to Dismiss**

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  "[T]he court is to accept as true all facts alleged in the

complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning

Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in Twombly) (quoting Fed. R. Civ. P. 8(a)). To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. at 555, and present claims that are "plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." Id. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to

the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010) (citing <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) and <u>Hayden v. Cty. of Nassau</u>, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." <u>Gallagher v. Empire HealthChoice Assurance, Inc.</u>, 339 F. Supp. 3d 248, 254 (S.D.N.Y. 2018) (alteration in original) (quotation marks omitted).

## II. <u>ANALYSIS</u>

Defendants argue that (1) Plaintiff lacks standing, because he had not suffered an "injury-in-fact" as of the time the Complaint was filed; (2) the Lease's forum selection clause and pre-litigation mediation condition require that the case be dismissed or transferred to California; (3) the Court lacks personal jurisdiction over the Trust; and (4) Plaintiff fails to state a claim for relief. (<u>See</u> Def. Br. (Dkt. No. 20))

### A. <u>Whether Plaintiff Has Established Standing to Pursue His Claims</u>

#### 1. <u>Applicable Law</u>

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise." <u>United States v. Suarez</u>, 791 F.3d 363, 366 (2d Cir. 2015) (quotation marks and citation omitted). To establish constitutional standing, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016) (citing <u>Lujan v. Defenders of</u>

Wildlife, 504 U.S. 555, 560-61 (1992)). "[S]tanding is to be determined as of the commencement of suit." Lujan, 504 U.S. at 571 n.5.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158(2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560 n.1). "'As a general rule,' this means 'plaintiff must have personally suffered.'" In re the Bear Stearns Cos., Inc. Sec., 8 MDL 1963 (RWS), 2016 WL 4098385, at *17 (S.D.N.Y. July 25, 2016) (quoting W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 107 (2d Cir. 2008)). "Concreteness" refers to an injury that is "real, and not abstract." Spokeo, 578 U.S. at 340 (quotation marks omitted).

Plaintiff bears the burden of establishing the elements of standing and, "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Id. at 338 (quotation marks and citations omitted). "A plaintiff must 'demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" See Nat. Res. Def. Council, Inc. v. Wheeler, 367 F. Supp. 3d 219, 227 (S.D.N.Y. 2019) (quoting Town of Chester, N.Y. v. Laroe Ests., Inc., 137 S. Ct. 1645, 1650 (2017)).

A party seeking declaratory relief may establish standing by demonstrating that "there is a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment." <u>Beazley Ins. Co., Inc.</u> <u>v. Ace Am. Ins. Co.</u>, 150 F. Supp. 3d 345, 355 (S.D.N.Y. 2015) (quoting <u>Maryland Cas. Co. v.</u> <u>Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)).

### 2.   **Analysis**

Defendants contend that Plaintiff lacks standing because, at the time the Complaint was filed in June 2020 – about two months before Plaintiff's planned August 2020 trip to Los Angeles – Plaintiff had not suffered an injury in fact. (Def. Br. (Dkt. No. 20) at 14-15)  Defendants note that, while Plaintiff alleges that "[g]lobal coronavirus restrictions [would] render performance of the Booking Agreement impossible" (<u>see</u> Cmplt. (Dkt. No. 1) ¶¶ 23, 38, 42), "he fails to allege the specific terms of any such restriction, the timing any restriction was enacted, and the duration of any such restriction." (Def. Br. (Dkt. No. 20) at 15; <u>see</u> <u>also</u> Def. Reply Br. (Dkt. No. 23) at 5 ("[Plaintiff] alleges nothing <u>in effect</u> <u>in June</u> . . . which prohibited contractual performance in <u>August</u>." (emphasis in original)))  Defendants argue that, absent such allegations, Plaintiff cannot establish a non-hypothetical, non-conjectural injury at the time the Complaint was filed. (Def. Br. (Dkt. No. 20) at 15; Def. Reply Br. (Dkt. No. 23) at 5-6)

Plaintiff responds that he had suffered an injury in fact as of the time the Complaint was filed because (1) "LVH had unambiguously stated that the [$148,750] Deposit would not be refunded"; and (2) "Plaintiff was unequivocally informed that Defendants intended to hold him liable under the Lease and Rider, agreements that he did not authorize." (Pltf. Br. (Dkt. No. 22) at 6-8)

This Court concludes that Plaintiff has adequately shown that he had standing at the time the Complaint was filed.  The crux of Defendants' argument is that Plaintiff does not allege with sufficient specificity the ordinances that would be in effect two months from the

14

filing of the Complaint, in August 2020. But given that the COVID-19 virus was rapidly spreading, and that – unsurprisingly – local and federal rules pertaining to in-person gatherings and travel were in constant flux, Plaintiff is not required to state with specificity what conditions would exist in the near future. Rather, it is sufficient that Plaintiff alleges that (1) "the coronavirus disease [was] spreading rapidly [in March 2020]," (2) "international health organizations declared that the emerging threat from Covid-19 had risen to the level of a global pandemic," (3) "numerous Public Orders [in Los Angeles declared that] all non-essential businesses [were] required to cease operations . . . [and that] private gatherings of more than nine . . . individuals [were] prohibited"; and (4) global travel restrictions limited or prohibited non-essential travel. (Cmplt. (Dkt. No. 1) ¶¶ 21, 23, 37) These circumstances demonstrate that there was a substantial risk that LVH would be unable to permit Plaintiff to utilize the Property in August 2020. (See id. ¶ 38)

Plaintiff further alleges that, despite this non-hypothetical, non-conjectural risk that he would not be able to use the Property in August 2020, Defendants refused to refund Plaintiff's $148,750 Deposit or to reschedule his planned rental. (Cmplt. (Dkt. No. 1) ¶¶ 22, 24) Plaintiff also alleges that, on May 26, 2020, Defendants informed him that he was required to pay the balance due under the Lease or Rider – documents Plaintiff claims he did not authorize LVH to sign on his behalf.[7] (Id. ¶ 27) Given these circumstances, Plaintiff has adequately alleged an actual or imminent, non-conjectural and non-hypothetical injury with respect to his constructive fraud and unjust enrichment claims. For the same reasons, Plaintiff has also

---

[7] The Rider – which was signed by Barton on behalf of Plaintiff on February 27, 2020 – states that the balance under the Lease is due "90 days post signature," which is May 27, 2020. (See Rider (Dkt. No. 1-1) at 25) Similarly, under the Booking Agreement, Plaintiff's payment of $148,750 is due on April 30, 2020, and was thus already outstanding at the time the Complaint was filed. (See Booking Agreement (Dkt. No. 1-1) at 2)

"demonstrate[ed] that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Beazley, 150 F. Supp. 3d at 355.[8]

Because Plaintiff has adequately alleged an injury-in-fact, Defendants' Rule 12(b)(1) motion to dismiss will be denied.[9]

## B. Dismissal or Transfer Pursuant to 28 U.S.C. § 1404(a) and the Forum *Non Conveniens* Doctrine

### 1. Applicable Law

Under 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party seeking a change of venue has the burden of establishing by clear and convincing evidence that transfer is warranted. N. Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010).

Generally, a district court has "broad discretion" when deciding a motion to transfer pursuant to section 1404(a). See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). In a typical case, the court evaluates both "the convenience of the parties and various public-interest considerations" by "weigh[ing] the relevant factors and decid[ing] whether, on

---

[8] Defendants argue that Plaintiff "cannot be injured by the alleged refusal to give him a refund," because Plaintiff "is not entitled to a refund" under the relevant agreements. (See Def. Reply Br. (Dkt. No. 23) at 5; Booking Agreement (Dkt. No. 1-1) at 3) But whether Plaintiff can ultimately recover the Deposit from Defendants "goes to the merits, not to a court's power to resolve the controversy." See SM Kids, LLC v. Google LLC, 963 F.3d 206, 212 (2d Cir. 2020) ("[A] challenge does not implicate Article III standing when it 'simply presents a straightforward issue of contract interpretation.'" (quoting Perry v. Thomas, 482 U.S. 483, 492 (1987))).

[9] Defendants do not address traceability or redressability, and this Court finds that Plaintiff has adequately established these prongs of the standing inquiry.

balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 62-63 (2013); D.H. Blair & Co., 462 F.3d at 106-07 (discussing relevant factors, including "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties").

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause." Atl. Marine, 571 U.S. at 63. Where there is a valid forum selection clause, "'[i]n all but the most unusual cases . . . the "interest of justice" is served by holding parties to their bargain' and upholding the forum-selection clause." Encompass Aviation, LLC v. Surf Air Inc., No. 18 CIV. 5530 (CM), 2018 WL 6713138, at *6 (S.D.N.Y. Nov. 30, 2018).

The Second Circuit has adopted a four-part test for determining whether a forum selection clause is enforceable. A district court must first assess (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether "the clause [i]s mandatory or permissive"; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." Phillips v. Audio Active, Ltd., 494 F.3d 378, 383 (2d Cir. 2007) (citations omitted). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." Id. (citations omitted). The court must then "ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Id. at 383-84 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S.

1, 15 (1972)); see also Santos v. Costa Cruise Lines, Inc., 91 F. Supp. 3d 372, 377 (E.D.N.Y. 2015) (applying four-part test to determine whether forum selection clauses require dismissal based on forum non conveniens).

### 2.   Analysis

This case involves the application of two conflicting forum selection clauses found in the Booking Agreement and in the Rider.  The Booking Agreement states that "[t]his agreement will be governed under the law of New York State, USA and any disputes must be referred to a New York court."  (Booking Agreement (Dkt. No. 1-1) at 4)  The Rider states that "[t]his Lease shall be governed by and construed in accordance with the laws of the State of California.  Any action instituted by any party hereto against the other with regard to this Lease shall be in Los Angeles County, California."  (Rider (Dkt. No. 1-1) at 28-29)

Each clause uses "mandatory" language ("must" and "shall") to describe where a suit may be brought.  See Laufer Grp. Int'l v. Tamarack Indus., LLC, 599 F. Supp. 2d 528, 530 (S.D.N.Y. 2009) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." (quotation marks and citations omitted)); accord Glob. Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 225-26 (2d Cir. 2011).

Moreover, the Rider contains a clause stating that it supersedes any prior agreement relating to the subject matter of the Lease:

> The Lease, as modified by this Rider, constitutes the entire agreement between the parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement.  There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Lease.

(Rider (Dkt. No. 1-1) at 30)  Accordingly, to the extent that the Lease supersedes the Booking Agreement, the Rider's forum selection clause would govern.  See Maersk Line A/S v. Carew,

No. 19 CIV. 4870 (JPC), 2022 WL 602851, at *7 (S.D.N.Y. Mar. 1, 2022) (relying on forum selection clause in one agreement, where that agreement specified that it would govern where separate agreements were in conflict).

      Before considering whether the Rider's forum selection clause supersedes the Booking Agreement's forum selection clause, however, this Court must decide the threshold question of whether the Rider is enforceable as to Plaintiff. This issue turns on whether LVH was authorized to sign the Lease and Rider on Plaintiff's behalf. See KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC, 812 F. Supp. 2d 377, 384 (S.D.N.Y. 2011) (holding that plaintiff was bound by forum selection clause contained in agreement signed by plaintiff's registered agent).

      Defendants argue that LVH was authorized to execute the Lease and Rider on Plaintiff's behalf, citing Paragraph 8 in the Booking Agreement – the "Roles of the Company" provision. (See Def. Br. (Dkt. No. 20) at 27) That provision reads as follows:

> **Roles of the Company:** The Company is an agent of the Owner and neither the Company nor any of its affiliated entities, shareholders, employees, agents and representatives ("Affiliates") are liable for any delays, accidents, damages, injuries or losses suffered by you, your guests or the Property other than the negligence or wilful[l] misconduct of the Company. . . . Furthermore, you acknowledge with your written consent that [sic] may act on your behalf as your agent to enter into agreements with vendors and owners in order to provide services covered under this agreement.

(Booking Agreement (Dkt. No. 1-1) at 3-4)

      Under New York law,[10] "'an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act.'" Bigio v. Coca-Cola Co., 675 F.3d 163, 175 (2d Cir. 2012) (quoting N.Y. Marine & Gen. Ins. Co. v. Tradeline, LLC, 266 F.3d 112, 122 (2d Cir. 2001)).

---

[10] In accordance with the Booking Agreement's choice of law provision (Booking Agreement (Dkt. No. 1-1) at 4), this Court will apply New York law to interpret the Booking Agreement and to determine what, if any, agency relationship results from that agreement.

"To bind a principal . . . [,] an agent must have authority, whether apparent, actual or implied." Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 122 (2d Cir.1998) (quotation marks and citation omitted). "[A]n agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." Highland Cap. Mgmt. LP v. Schneider, 607 F.3d 322, 327 (2d Cir. 2010). "[T]he mere creation of an agency for some purpose does not automatically invest the agent with 'apparent authority' to bind the principal without limitation. Thus, a party cannot claim that an agent acted with apparent authority when it knew, or should have known, that the agent was exceeding the scope of its authority." Leser v. U.S. Bank Nat. Ass'n, No. 09-CV-2362 KAM MDG, 2012 WL 4472025, at *10 (E.D.N.Y. Sept. 25, 2012) (quotation marks, alterations, and citations omitted).

Applying these principles here, this Court concludes that Defendants have not demonstrated as a matter of law that LVH was authorized to execute the Lease and Rider on Plaintiff's behalf.

As an initial matter, the "Roles of the Company" provision cited by Defendants does not mention LVH – or any other entity that is purportedly authorized to act on Plaintiff's behalf. (See Booking Agreement (Dkt. No. 1-1) at 4 ("[Y]ou acknowledge with your written consent that [sic] may act on your behalf as your agent to enter into agreements with vendors and owners in order to provide services covered under this agreement.")) Defendants argue that this omission is a mere "drafting error," and that "[t]he only plausible reading of that provision" is that LVH is authorized to act on Plaintiff's behalf. (See Def. Br. (Dkt. No. 20) at 27 n.7)

Under New York law, "contracts are unenforceable unless the parties reach a meeting of the minds on all material terms." Baker v. Robert I. Lappin Charitable Found., 415 F.

Supp. 2d 473, 483 (S.D.N.Y. 2006).  "Where essential terms are missing, a court may not rewrite a contract for the parties to impose obligations not bargained for, but the court must consider whether the missing terms can be supplied in a reasonable fashion consistent with the intent of the parties."  Id. at 484 (citation omitted).

Here, the missing term – which is critical to Plaintiff's alleged manifestation of assent to the purported agency relationship – cannot be reasonably inferred from the remainder of the Booking Agreement.  Indeed, the remainder of the Booking Agreement does not address or suggest any agency relationship between Plaintiff and LVH.  To the contrary, the Booking Agreement repeatedly states that "the Company" (LVH) "is an agent" of the "Owner."  (Booking Agreement (Dkt. No. 1-1) at 3)

Even if this Court could supply the missing term here, Defendants have not shown that LVH was authorized to enter into the Lease/Rider on Plaintiff's behalf.

Under the "Roles of the Company" provision, LVH is only authorized to enter into "agreements with vendors and owners in order to provide services covered under this agreement."  (Booking Agreement (Dkt. No. 1-1) at 4)  The term "services" is not specifically defined in the Booking Agreement, but the only services referenced in the Booking Agreement are "staff services" (including maid and butler service), "guest services," and "telecommunication services."  (Id. at 2-4)  The Lease and Rider are rental agreements[11] – they

---

[11]  The Lease addresses the "terms and conditions" applicable to the rental of the Property (Lease (Dkt. No. 1-1) at 12), including, inter alia, the term and cost of the lease; related costs for parking, storage, and utilities; and rules governing the rental of the Property.  (Id. at 6-12)  Attached to the Lease are a number of disclosures and notices that pertain to the rental of the Property: (1) "Bed Bug Disclosure"; (2) "Lead-Based Paint and Lead-Based Paint Hazards Disclosure, Acknowledgement and Addendum"; (3) "Lease/Rental Mold and Ventilation Addendum"; (4) "Pool, Hot Tub, and Spa Addendum"; (5) "Water Heater and Smoke Detector Statement of Compliance"; and (6) "Water-Conserving Plumbing Fixtures and Carbon Monoxide

are not services agreements, much less "agreements . . . to provide services covered under [the Booking Agreement." (Id.)  Indeed, instead of addressing services covered under the Booking Agreement, the Lease and Rider supplant the terms and conditions of the Booking Agreement by, among other things, altering the price of the rental, changing the forum for litigation, and adding a pre-litigation mediation requirement.[12]  (Compare Lease & Rider (Dkt. No. 1-1) at 11, 25, 29, with Booking Agreement (Dkt. No. 1-1) at 2, 4)

Given that (1) the Booking Agreement does not identify the entity that purportedly has the authority to act on Plaintiff's behalf; and (2) the Lease and Rider do not address "services," Defendants have not shown as a matter of law that LVH was authorized to sign the Lease and Rider on Plaintiff's behalf.  The forum selection clause contained in the Rider is thus not enforceable as to Plaintiff.

In the absence of an enforceable California forum selection clause, Defendants have also not shown that transfer of this case to the Central District of California is warranted. At least two of the defendants – LVH and Barton – are presumptively subject to the New York forum selection clause in the Booking Agreement, since this clause is mandatory, encompasses

---

Detector Notice."  (Id. at 13-20)  The Rider supplements the Lease by providing "additional payment instructions" and other terms and conditions.  (Rider (Dkt. No. 1-1) at 25-38)
[12]  Citing the Booking Agreement's reference to "in order to provide services," Defendants argue that the Lease and Rider can properly be understood as "agreements necessary 'to provide' services under the Booking Service Agreement."  (See Def. Reply Br. (Dkt. No. 23) at 7; see also id. ("Plaintiff offers no alternative interpretation of this provision."))  As discussed above, however, Plaintiff has plausibly shown that the "Roles of the Company" provision addresses agreements to provide services – including the staff and concierge services discussed elsewhere in the Booking Agreement – and that the Lease and Rider are not agreements to provide such services.  Even if the language "in order to provide services" were ambiguous, any such ambiguity would have to be resolved in favor of Plaintiff, as the non-movant.  See Jackson v. Harvest Cap. Credit Corp., No. 17 CIV. 5276 (JFK), 2018 WL 2041389, at *2 (S.D.N.Y. Apr. 30, 2018) (on a motion to dismiss, the Court "resolve[s] any contractual ambiguities in favor of the plaintiff.").

the claims in this litigation, and was reasonably communicated to LVH and Barton.[13]  See

Phillips, 494 F.3d at 383.

Defendants argue, however, that California is the proper forum for the Trust (and,

by extension its Trustee, Defendant Andrew Robbins), because (1) "the Lease/Rider is governed

by California . . . law"; (2) "the subject Property is based in California"; and (3) "neither Plaintiff

nor the Owner operate out of New York." (Def. Br. (Dkt. No. 20) at 11, 17-18, 21)[14]

Defendants do not explain how these circumstances impact the seven-factor analysis this Court

must utilize in assessing the convenience of the parties and witnesses and the interest of justice,

however.  See Atl. Marine, 571 U.S. at 62-63.  Indeed, the two individual Defendants – Barton

and Robbins – are residents of New York; and the Booking Agreement – the only agreement in

this case to which Plaintiff is bound – was negotiated by LVH, which is likewise headquartered

in New York. (See Cmplt. (Dkt. No. 1) ¶¶ 9-10; Robbins Decl. (Dkt. No. 21) ¶ 5)  In addition,

"[t]he fact that some claims are clearly subject to the [forum selection] clause can weigh strongly

in favor of enforcing the forum-selection clause as to the entire action, . . . especially where [as

here] all of the claims are factually interrelated."  Lavazza Premium Coffees Corp. v. Prime Line

---

[13]  The parties do not address – and this Court need not decide – whether Robbins, in his capacity
as trustee, is subject to the forum selection clause, which provides that LVH is an "agent" of the
"Owner."  (Booking Agreement (Dkt. No. 1-1) at 4); see Fasano v. Guoqing Li, 482 F. Supp. 3d
158, 170 (S.D.N.Y. 2020) ("[A] signatory to a contract may invoke a forum selection clause
against a non-signatory if the non-signatory is 'closely related' to one of the signatories.")).

[14]  In arguing that the Court lacks personal jurisdiction over Andrew Robbins and the Trust,
Defendants note that "[a]ll negotiations of the Lease and Rider . . . were done from California,
the Property is in California, the Trust's assets and management/operations are not in New York,
payments were deposited in a California bank account, the Lease is governed by California law,
and Plaintiff is not based in New York."  (Def. Reply Br. (Dkt. No. 23) at 8-9)  The Complaint
alleges, however, that "the Lease and Rider . . . were negotiated and executed through
conversations and correspondence [between the Owner and] LVH and Barton at [the latter's]
New York office." (Cmplt. (Dkt. No. 1) ¶ 8)  Moreover, as discussed below, the Trust is not a
defendant here, and Robbins is a resident of New York.  (Robbins Decl. (Dkt. No. 21) ¶ 5)

Distributors Inc., No. 20 CIV. 9993 (KPF), 575 F. Supp. 3d 445, 466-67 (S.D.N.Y. Dec. 10, 2021) (quotation marks and citations omitted)).

In sum, Defendants have not shown that Plaintiff is subject to a California forum selection clause or that transferring this case to California is warranted. Accordingly, Defendants' motion to dismiss on forum <u>non conveniens</u> grounds or, in the alternative, to transfer this case under 28 U.S.C. § 1404(a) will be denied. For the same reason – namely, that Plaintiff is not bound by the Lease and the pre-litigation mediation clause contained therein (Lease (Dkt. No. 1-1) at 11) – to the extent that Defendants' motion to dismiss is premised on Plaintiff's failure to first engage in mediation (Def. Br. (Dkt. No. 20) at 18), Defendants' motion will be denied.

## C.   Whether this Court Has Personal Jurisdiction Over Defendant Robbins

### 1.   Applicable Law

"In diversity cases such as this, a district court looks to the law of the state in which it sits to determine whether it has personal jurisdiction." Jonas v. Est. of Leven, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citations omitted). This Court will therefore look to New York law to determine whether it may exercise personal jurisdiction over Defendant Robbins.

"Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if he is domiciled in New York, served with process in New York, or continuously and systematically does business in New York." Id. "In addition, a defendant may be subject to New York's long-arm statute, N.Y. C.P.L.R. § 302, if he engages in the following acts either in person or through an agent and such acts relate to an asserted claim: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state; (3) commits a tortious act outside the state but injures a person or

property in the state; or (4) owns, uses, or possesses any real property in the state." Id. at 323-24
(emphasis omitted) (citing N.Y. C.P.L.R. § 302(a)).

> ### 2.    Analysis

Defendants argue that this Court does not have personal jurisdiction over the
Trust under N.Y. C.P.L.R. § 302(a)(1), because the Trust did not transact business in New York
in any way connected to the instant dispute. (Def. Br. (Dkt. No. 20) at 18-22; see id. at 21
(noting that "(1) all negotiations of the Lease and Rider . . . were done from California, (2) the
subject Property is located in California, (3) none of the Trust's assets or management/operations
are in New York, (4) any payments related to this dispute were deposited into a California-based
bank account, (5) Plaintiff is not a New York resident and was not in New York during the
relevant time period, and (6) the Lease contains a California choice-of-law provision")))

The Complaint does not name the Trust as a Defendant, however. Instead, the
Complaint names Andrew Robbins in his capacity as trustee of the Trust. (Cmplt. (Dkt. No. 1) ¶
9) And although the Complaint pleads that Robbins is a citizen of Washington state (Cmplt.
(Dkt. No. 1) ¶ 6), Defendants concede that Robbins is a resident of New York. (Robbins Decl.
(Dkt. No. 21) ¶ 5 (stating "I live in New York"))[15]

Plaintiff argues that Robbins's New York residency provides a sufficient basis for
the Court to exercise personal jurisdiction over him.[16] (Pltf. Opp. (Dkt. No. 22) at 11-13)
Defendants argue, however, that "Plaintiff has cited no cases stating that a trust is considered 'at

---

[15] Plaintiff represents that, when the Complaint was filed, he was unaware that Robbins resides
in New York, and relied on the fact that the Lease provides a Seattle, Washington notice address
for the Trust. (Pltf. Opp. (Dkt. No. 22) at 12-13)
[16] Plaintiff also maintains that the Court can exercise jurisdiction over Robbins under N.Y.
C.P.L.R. § 302(a)(1). (Pltf. Opp. (Dkt. No. 22) at 12)

home' [] for personal jurisdiction purposes [] in the state in which the Trustee happens to reside in his individual capacity." (Def. Reply Br. (Dkt. No. 23) at 9-10 (emphasis omitted))

Defendants' argument is misplaced. In order to assert claims against Robbins in his capacity as trustee, Plaintiff need not show that the Court can exercise jurisdiction over the Trust. Application of Chassman, 99 N.Y.S.2d 651, 653 (Sup. Ct. 1950) ("[I]t has been held as well settled in this state that a foreign testamentary trustee who is a resident of this state, is subject to the jurisdiction of our courts."); Braman v. Braman, 236 A.D. 164, 168 (1st Dept. 1932) ("Equity acts in personam and, if it has jurisdiction of the person of the defendant, may order him to account for or dispose of the trust property as the principles of equity dictate, even though the trust property may be situate[d] in a foreign jurisdiction." (quotation marks and citation omitted)). Because Robbins is a resident of New York, this Court can properly exercise personal jurisdiction over him, pursuant to N.Y. C.P.L.R. § 301.

Accordingly, Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(2) will – as to Defendant Robbins – be denied.

### D.   **Whether the Complaint States a Claim**

Plaintiff asserts claims for declaratory judgment and unjust enrichment against all Defendants, and constructive fraud against LVH and Barton. (Cmplt. (Dkt. No. 1) ¶¶ 35-54) Defendants contend that the Complaint fails to state a claim.

### 1.   **Declaratory Relief**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Courts have consistently interpreted this permissive

language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." <u>Dow Jones & Co., Inc. v. Harrods Ltd.</u>, 346 F.3d 357, 359 (2d Cir. 2003) (citations omitted).  But while "a district court's determination whether to exercise declaratory jurisdiction is denominated as discretionary, . . . a district court is <u>required</u> to entertain a declaratory judgment action '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" <u>Cosa Instrument Corp. v. Hobre Instruments BV</u>, 698 F. Supp. 2d 345, 350 (E.D.N.Y. 2010) (emphasis in <u>Cosa</u>) (quoting <u>Starter Corp. v. Converse, Inc.</u>, 84 F.3d 592, 597 (2d Cir. 1996)).

Here, Plaintiff seeks a declaration that (1) "[t]he Booking Agreement is a valid and binding contract between LVH and Mr. Reed"; (2) "Defendants are required to refund the Deposit in its entirety to Mr. Reed"; (3) "Global coronavirus restrictions, and those in place in California and the United Kingdom, render performance of the Booking Agreement impossible, and require[] the immediate return of the Deposit and further release[] Mr. Reed from any other obligation, payment, or liability under the Booking Agreement"; (4) "LVH was not authorized to execute any contracts on Mr. Reed's behalf, and Mr. Reed did not provide LVH or Barton with the authority, either express or implied, to execute the Lease and Rider on his behalf"; and (5) "[t]he Lease and Rider are void and unenforceable against Mr. Reed, and Mr. Reed has no obligation, payment, or liability under the Lease and Rider." (Cmplt. (Dkt. No. 1) at 7)

Although Defendants concede that the Booking Agreement is a valid and binding contract (Def. Br. (Dkt. No. 20) at 22), they dispute the Complaint's remaining assertions. Defendants contend that Plaintiff has not pled facts showing that (1) the COVID-19 pandemic

rendered performance under the Booking Agreement impossible; (2) Plaintiff is entitled to a refund of his Deposit; or (3) that LVH was not authorized to enter into the Lease and Rider on Plaintiff's behalf. (Id. at 23-24; Def. Reply Br. (Dkt. No. 23) at 10-12 & 10 n.6)

### a.    Impossibility and Frustration of Purpose

With respect to whether "[g]lobal coronavirus restrictions . . . render[ed] performance of the Booking Agreement impossible," Plaintiff alleges that such restrictions "rendered the Property unfit for its intended use, and LVH is unable to perform its obligations to permit Mr. Reed to utilize the Property as set forth in the Booking Agreement." (Cmplt. (Dkt. No. 1) ¶ 38; see also id. ¶ 39 ("Mr. Reed cannot utilize the Property to host the intended number of guests, twelve (12), and is prohibited from allowing the maid, butler, and concierge services [provided for under the Booking Agreement]."); id. ¶ 23 ("As a resident of the United Kingdom, Mr. Reed is subject to heightened travel restrictions, which includes a Covid-19 Exceptional Travel Advisory Notice advising against all non-essential travel.  California has also prohibited non-essential travel for vacations or pleasure.")) These allegations are sufficient to raise issues of fact under the impossibility doctrine and the related frustration of purpose doctrine.

"Under New York law, impossibility . . . is a defense to a breach of contract action only when performance is rendered objectively impossible by an unanticipated event that could not have been foreseen or guarded against in the contract." Gap Inc. v. Ponte Gadea New York LLC, 524 F. Supp. 3d 224, 237 (S.D.N.Y. 2021) (quotation marks, alterations, and citations omitted).  "Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible." Kel Kim Corp. v. Cent. Markets, Inc., 70 N.Y.2d 900, 902 (1987).  By contrast, "[t]he doctrine of frustration of purpose discharges a party's duties to perform under a contract where a 'wholly

unforeseeable event renders the contract valueless to one party.'" Gap, 524 F. Supp. 3d at 234 (citation omitted). "In order to be invoked, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, the transaction would have made little sense." Id. (quotation marks and citation omitted).

Defendants contend that the Complaint does not specify the restrictions that rendered performance under the Booking Agreement impossible, or "set forth when [these restrictions] were enacted[,] . . . the duration of their applicability, . . . how they apply to the Property or Plaintiff," or whether they were in place in August 2020, when Plaintiff's rental began. (See Def. Br. (Dkt. No. 20) at 24)

As discussed earlier in connection with Defendant's standing arguments, however, Plaintiff is not required to identify at this stage of the proceedings the specific COVID-19-related restrictions that would be in place at the time of the rental. In the circumstances here, where the COVID-19 virus was rapidly spreading and had risen to the level of a global pandemic, it is sufficient that Plaintiff alleges that (1) global travel restrictions limited non-essential travel for vacations or pleasure; and (2) Los Angeles officials had issued a series of public orders that prohibited the operation of non-essential businesses or the private gathering of more than nine individuals. (Cmplt. (Dkt. No. 1) ¶¶ 21, 23, 37) At the pleading stage, these allegations are sufficient to permit Plaintiff to assert that (1) Defendants would be unable to provide the "maid, butler, and concierge services" specified in the Booking Agreement; and (2) the Property was rendered "unfit for its intended use," because Plaintiff would not be able to "utilize the Property to host the intended number of guests" or to benefit from the services provided under the Booking Agreement. (Id. ¶¶ 38-39) Indeed, given that travel from the

United Kingdom and into California was restricted (id. ¶ 23), Plaintiff may not have been able to use the Property at all.[17]

Defendants also argue that Plaintiff cannot show that the pandemic was an "unanticipated event that could not have been foreseen or guarded against in the contract," because the force majeure clause contained in the Booking Agreement "contemplated that the contract's performance could be hindered by changes to laws, regulations, or government policies." (Def. Br. (Dkt. No. 20) at 25)  The force majeure clause states that

> Neither the Company (including its Affiliates) nor the Owner will be liable for any damages, losses or injuries caused by conditions of that person's control, including, without limitation, any fire, flood, hurricane, tsunami, war, revolution, terrorism or change to any law, regulation or government policy.

(Booking Agreement (Dkt. No. 1-1) at 4)

Setting aside whether the force majeure clause encompasses the COVID-related restrictions at issue here, Defendants have not shown that the clause precludes Plaintiff's claims

---

[17] Defendants also argue that Plaintiff cannot rely on the impossibility doctrine because (1) the circumstances cited in the Complaint existed two months before performance was due; and (2) "the subject matter of the contract" was not destroyed. (Def. Br. (Dkt. No. 20) at 24-26)  With respect to the timing issue, at least one court in this District has recognized that "the fact that defendant may have repudiated the contract prior to the date performance was due and prior to the subsequent impossibility, is immaterial.  Where performance of a promise is rendered impossible, the duty of the promisor is discharged even though he has already committed a breach by anticipatory repudiation."  Serdarevic v. Centex Homes, LLC, No. 08 CV 5563 VB, 2012 WL 4054161, at *15 (S.D.N.Y. Sept. 5, 2012), adhered to in rel. part on reconsideration, No. 08 CV 5563 VB, 2012 WL 5992744 (S.D.N.Y. Nov. 7, 2012) (citation omitted); see also Nelkin v. Wedding Barn at Lakota's Farm, LLC, 72 Misc.3d 1086, 1094 (N.Y. Civ. Ct. 2020) (party could invoke force majeure clause to excuse performance five months before performance was due, since "there was no indication that the [COVID-19-related] prohibitions would be lifted by October 10, 2020").  As to the latter issue, Defendants misstate the law:  impossibility excuses a party's performance either when the "the subject matter of the contract [has been destroyed] or the means of performance makes performance objectively impossible."  Kel Kim Corp., 70 N.Y.2d at 902.  Here, as discussed above, Plaintiff has adequately alleged both that Defendants would be unable to provide the staff and concierge services provided for in the Booking Agreement, and that the Property had been rendered "unfit for its intended use."

of impossibility and frustration of purpose.  The <u>force majeure</u> clause merely provides that LVH

and its affiliates will not be liable "for any damages, losses, or injuries" caused by <u>force majeure</u>

conditions.  Defendants have not shown that the <u>force majeure</u> clause forecloses Plaintiff from

relying on the impossibility and frustration of purpose doctrines.[18]

       In sum, Plaintiff has adequately alleged that he is entitled to a declaration that

performance under the Booking Agreement was impossible or that the purpose of the Booking

Agreement was frustrated, and that he was thus released from any obligation, payment, or

liability under the Booking Agreement.

       **b.**     **<u>Refundability of the Deposit</u>**

       Plaintiff also seeks a declaration stating that the "[g]lobal coronavirus

restrictions" "require[] the immediate return of the Deposit." (Cmplt. (Dkt. No. 1) at 7)

       The Booking Agreement explicitly states that payments to LVH are non-

refundable, however:

> To cancel your booking, you must provide the Company with written notice of your
> cancellation.  All payments made by you are non-refundable.  The Company will make
> best efforts to re-book the property for the same period and refund on [a] pro-rata basis
> any new rental fees up to the total amount paid by you.

---

[18]  Defendants assert that it was foreseeable at the time the parties entered into the Booking
Agreement that the COVID-19 pandemic could affect travel. (Def. Br. (Dkt. No. 20) at 25 n.6
(discussing January 30, 2020 World Health Organization declaration that the coronavirus was a
"Public Health Emergency of International Concern"))  But even if the parties were aware of the
existence of the COVID-19 virus in late January 2020, Plaintiff has adequately pled that the
spread of the virus and its effect on businesses and in-person gatherings were not foreseeable in
mid-February – prior to "international health organizations declar[ing]" in mid-March 2020 that
the virus had "risen to the level of a global pandemic." (Cmplt. (Dkt. No. 1) ¶ 21)

(Booking Agreement (Dkt. No. 1-1) at 3)[19]  Plaintiff has not offered a legal theory or case law

supporting his claim to a refund where such a refund is expressly precluded by the terms of the

Booking Agreement.

In sum, Plaintiff has not pled facts sufficient to support his claim that he is

entitled to a declaration that, under the Booking Agreement, Defendants must immediately

refund the Deposit to him.[20]

###### c.     Plaintiff's Obligations Under the Lease and Rider

Plaintiff also seeks a declaration that "LVH was not authorized to execute any

contracts on Mr. Reed's behalf," that "[t]he Lease and Rider are void and unenforceable against

Mr. Reed," and that "Mr. Reed has no obligation, payment, or liability under the Lease and

Rider." (Cmplt. (Dkt. No. 1) at 7)

As discussed above, Plaintiff has plausibly alleged that the Booking Agreement

does not provide LVH with the authority to enter into the Lease and Rider on his behalf.

Accordingly, Plaintiff has pled facts sufficient to demonstrate that he is entitled to a declaration

as to LVH's authority and the enforceability of the Lease and Rider.

*          *          *          *

To summarize:  Plaintiff has stated a claim for declaratory relief as to whether (1)

his performance under the Booking Agreement is excused; and (2) the Lease and Rider are

---

[19]  Having argued that the Lease and Rider are not enforceable, Plaintiff cannot claim that he is
entitled to a refund under the Lease or Rider.  (See Rider (Dkt. No. 1-1) at 25 ("The rent is non-
refundable unless Tenant terminates the Lease on account of Landlord's failure to timely deliver
possession of the property as per the Lease."))
[20]  That Plaintiff may not be entitled to a refund of his Deposit does not foreclose a claim against
LVH for failing to "make best efforts to re-book the property."  (Booking Agreement (Dkt. No.
1-1) at 3)

enforceable as to Plaintiff.  Plaintiff has not, however, stated a claim for declaratory relief as to the refundability of the Deposit.

### 2.     **Constructive Fraud**

Plaintiff alleges that LVH and Barton engaged in constructive fraud by entering into the Lease and Rider on Plaintiff's behalf without Plaintiff's authorization.  (Cmplt. (Dkt. No. 1) ¶¶ 43-49)

"'To state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" Senior Health Ins. Co. of Pennsylvania v. Beechwood Re Ltd., 345 F. Supp. 3d 515, 527-28 (S.D.N.Y. 2018) (quotation marks and citation omitted).  "The constructive fraud claim modifies the claim for actual fraud by replacing the scienter requirement with the requirement that Defendants maintained either a fiduciary or confidential relationship with Plaintiff." LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, 10 F. Supp. 3d 504, 524 (S.D.N.Y. 2014) (citing Brown v. Lockwood, 432 N.Y.S.2d 186, 193-94 (2d Dept. 1980)).

Defendants argue that Plaintiff has not adequately pled a constructive fraud claim. (Def. Br. (Dkt. No. 20) at 26-28)  According to Defendants, (1) the Booking Agreement expressly grants LVH the authority to enter into agreements such as the Lease and Rider on Plaintiff's behalf, and there was thus no "misrepresentation, false statement, or omission"; and (2) LVH and Barton did not owe a fiduciary duty to Plaintiff, since they were merely parties to a commercial contract.  (Id. at 26-28)

As discussed above, Defendants have not shown that the Booking Agreement authorizes LVH and Barton to enter into the Lease and Rider on Plaintiff's behalf.  Accordingly,

Defendants may not rely on their alleged authority to enter into contracts on Plaintiff's behalf to defeat Plaintiff's fraud claim.

Plaintiff has not plausibly alleged that LVH and Barton owed a fiduciary duty to Plaintiff, however.

"Under New York law, parties to a commercial contract do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree,' or if 'one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." Ross v. FSG PrivatAir, Inc., No. 03 CIV. 7292 (NRB), 2004 WL 1837366, at *5 (S.D.N.Y. Aug. 17, 2004) (quotation marks and citation omitted). "It is insufficient to merely allege the existence of a fiduciary relationship. Instead, to plead a cause of action alleging that defendants became fiduciaries, plaintiffs must allege at least some factors from which a court could conclude that such a relationship has been established." Id. at *6 (quotation marks and citation omitted). "[A]n arm's-length business relationship does not, without more, establish a fiduciary duty." In re Refco Inc. Sec. Litig., 826 F. Supp. 2d 478, 505 (S.D.N.Y. 2011) (citing WIT Holding Corp. v. Klein, 282 A.D.2d 527, 724 N.Y.S.2d 66, 68 (2d Dept. 2001)).

Here, Plaintiff alleges that, "[b]y virtue of the Booking Agreement, and their role as booking agents for Mr. Reed, LVH and Barton owed a duty of care and loyalty." "They further owed Mr. Reed an utmost fiduciary duty of honesty, and were required by that duty to disclose all material facts with respect to his rental of the Property." (Cmplt. (Dkt. No. 1) ¶ 44) These allegations fail the plausibility test.

As an initial matter, the Booking Agreement states that LVH is the "agent of the Owner." (Booking Agreement (Dkt. No. 1-1) at 3) And, as discussed above, nothing in the

Booking Agreement says that LVH is Plaintiff's agent.  Moreover, Plaintiff's claims in this

lawsuit are premised on the assertion that LVH and Barton were <u>not</u> Plaintiff's agents.  In sum,

Plaintiff has not pled facts demonstrating that LVH and Barton owed Plaintiff a fiduciary duty.

Moreover, Plaintiff has not pled facts demonstrating that he relied on LVH's and

Barton's representations to his detriment.

In sum, Plaintiff has not pled facts sufficient to demonstrate that (1) LVH and

Barton owed him a fiduciary duty; or (2) Plaintiff reasonably relied on LVH's and Barton's

alleged misrepresentations to Plaintiff's detriment.  Therefore, Plaintiff's constructive fraud

claim will be dismissed for failure to state a claim.

### 3.   <u>Unjust Enrichment</u>

In his unjust enrichment claim, Plaintiff seeks the return of his Deposit, which he

alleges "Defendants have unjustly retained," given that LVH could not "deliver the Property as

required by the Booking Agreement."  (Cmplt. (Dkt. No. 1) ¶¶ 51-54)

"'Unjust enrichment is an equitable remedy that is available in cases where there

is no contract between the parties.'"  <u>Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.</u>, No. 14-

CV-9687 (VEC), 2016 WL 4916969, at *8 (S.D.N.Y. Feb. 11, 2016) (quoting <u>Labajo v. Best</u>

<u>Buy Stores, L.P.</u>, 478 F. Supp. 2d 523, 530 (S.D.N.Y. 2007)).  To state a claim for unjust

enrichment under New York law, "a plaintiff must allege that (1) defendant was enriched; (2) the

enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good

conscience require defendants to make restitution."  <u>Id.</u> (citing <u>Labajo</u>, 478 F. Supp. 2d at 531).

"The existence of a valid and enforceable contract precludes recovery for unjust enrichment that

is in addition to or in conflict with the terms of the contract."  <u>Id.</u> (citation omitted).

Defendants argue that Plaintiff's claim is precluded by the Booking Agreement, which states that all payments are non-refundable.  (See Def. Br. (Dkt. No. 20) at 28-29; Booking Agreement (Dkt. No. 1-1) at 3)

Plaintiff responds that the existence of the Booking Agreement does not preclude his unjust enrichment claim, because, "[i]f the Booking Agreement is found to be invalid, the claim for unjust enrichment is proper."  (See Pltf. Opp. (Dkt. No. 22) at 17)  The parties agree, however, that the Booking Agreement is a valid and enforceable agreement between LVH and Plaintiff.  (See Cmplt. (Dkt. No. 1) at 7; Def. Br. (Dkt. No. 20) at 22)  Since "[t]here is no dispute that there is a valid and enforceable contract" between Plaintiff and LVH "on the subject at issue in this case," Plaintiff's unjust enrichment claim as to LVH and LVH's agent, Barton, cannot stand.  See Bancorp, 2016 WL 4916969, at *8.

Plaintiff argues, however, that his unjust enrichment claim as to Robbins is not precluded by the Booking Agreement, "because there is no binding contract" between Plaintiff and the Trust.  (Pltf. Opp. (Dkt. No. 22) at 17)  However, the Booking Agreement states that LVH "is an agent" of the Trust.  (See Booking Agreement (Dkt. No. 1-1) at 3)  Given that LVH "is an agent" of the Trust and that Robbins is the Trust's agent, Plaintiff's unjust enrichment claim fails as to Robbins.

Because the existence of the Booking Agreement precludes Plaintiff's unjust enrichment claim against Defendants, the unjust enrichment claim will be dismissed.

*        *        *        *

In sum, Defendants' Rule 12(b)(6) motion will be granted as to Plaintiff's constructive fraud and unjust enrichment claims, but will be denied in part as to Plaintiff's declaratory judgment claim, as set forth above.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part as set forth above. The Clerk of Court is directed to terminate the motion at Docket Number 19.

The initial pretrial conference in this matter will take place on **November 10, 2022 at 11:15 a.m.** in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. Seven days before the conference, the parties will submit a joint letter addressing the following in separate paragraphs: (1) a brief description of the case, including the factual and legal bases for the claims and defenses; (2) any contemplated motions; and (3) the prospect for settlement. For the Court's convenience, the parties must set forth the conference's date and time in the joint letter's opening paragraph. In preparing their joint letter and proposed case management plan, the parties will consult the Court's Individual Practices and model Case Management Plan and Scheduling Order – both of which are available on this District's website.

Dated: New York, New York
       September 30, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge